**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Jeffrey Reece, | : | |
| | : | |
| Plaintiff, | : | Case No.   3:08-CV-2451 |
| | : | |
| v. | : | Judge Jack Zouhary |
| | : | |
| Jeremy Bice, et al., | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF JEFFREY REECE'S MEMORANDUM CONTRA DEFENDANT
JEREMY BICE'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Defendant Jeremy Bice has filed a motion requesting that he be granted summary

judgment on plaintiff's federal and state claims for malicious prosecution.  The motion is

entirely without basis and must be denied.

**II.     FACTS**

Defendant Jeremy Bice incorrectly claims that the facts as set forth in his

Memorandum in Support of his Motion for Summary Judgment ("Motion for Summary

Judgment") are undisputed. Most significantly, the statements attributed to Christine

Fetter on page 3 of Defendant's Memorandum are contradicted by Mrs. Fetter's

deposition testimony. When the facts are considered in their entirety, relying on the

testimony of Christine Fetter, who is not a party to this case nor a friend of Jeff Reece,

rather than the affidavit of the individual defendant in this case, it is clear that Mr. Reece

did nothing wrong on February 4, 2007, let alone anything criminal, and that Officer Bice

1

pursued charges against Mr. Reece without probable cause that he had committed a criminal violation.

Around 6:30 p.m. on February 4, 2007, plaintiff Jeffrey Reece received a phone call from Mariann Fetter (herein Mariann), an acquaintance from church and the local YMCA, who asked him to give her a ride to Buffalo Wild Wings to meet her friends. Reece Dep. pp. 33-36, 41-44. Mr. Reece, who was twenty-two years old at the time, initially refused to give Ms. Fetter, who was fifteen, a ride due to their age difference, and he told her to have her parents or friends drive her. *Id.* p. 45-48. Mariann told Mr. Reece that her friends could not get her and that her parents had guests and told her to find a ride. *Id.* p. 45. Mr. Reece called two of Mariann's friends, who confirmed her story. *Id.* p 46-47.  Around 7:30, Mr. Reece got another call from Mariann, who again asked him to drive her to meet her friends. *Id.*p.47. Eventually, after being assured that Mariann's parents were ok with it, Mr. Reece agreed to give Mariann a ride to Buffalo Wild Wings. *Id*. p. 47-48

In her deposition, Christine Fetter, Mariann's mother, essentially confirms what Mariann told Mr. Reece on February 4, 2007. Mrs. Fetter had guests over and knew that someone was going to pick Mariann up and give her a ride to meet her friends at Buffalo Wild Wings, but Mariann did not tell Mrs. Fetter who was going to pick her up. Fetter Dep. pp 25-26. While Mrs. Fetter had a general household policy that her daughter should not go out alone with older men, Mrs. Fetter had not prohibited her daughter from seeing or being with Mr. Reece. Fetter Dep. p. 12, 27. In fact, Mrs. Fetter had never met Mr. Reece before the day of her deposition, and she did not remember ever seeing him before. Fetter Dep. p 9.

2

On February 4, 2007, Mr. Reece picked Mariann up at her house around 8:45 p.m. Reece Dep., p. 49. After picking Mariann up, they drove to Buffalo Wild Wings and Mariann went in to see if her friends were there. *Id.* p. 51-52 Soon afterwards, Mariann came back out and told Mr. Reece that her friends were not there, and Mr. Reece drove her to Burger King, where she got some food. *Id.* p. 52. After leaving Burger King,  Mr. Reece drove around while Mariann tried to contact her friends. *Id. 53*. Eventually, Mr. Reece decided to pull over and try to call Mariann's friends himself; if he could not get in touch with them, he told Mariann he would just take her home. *Id.* 53. Mr. Reece pulled over in a parking lot, and, approximately ten minutes later, Officer Jeremy Bice pulled into the parking lot. *Id.* 54.

Mr. Reece provided Officer Bice with his correct name and identifying information. Bice Dep., pp 20, 22. Mariann Fetter initially gave Officer Bice a false name, Alllie Gambosh, but later gave him her correct name. Bice Dep. pp 21, 23-24. Both Officer Bice and Mrs. Fetter testified that Mariann initially lied because she was scared. *Id.* p. 24.  Mariann was charged with obstructing official business for providing Officer Bice with a false name, and Officer Bice, who could not immediately contact her parents, placed her under arrest and took her to the police station. Bice Dep. pp. 24, 26-29.  Officer Bice did not believe that Mr. Reece had done anything to get Mariann to lie to him, and he had no reason to believe that Mr. Reece had done anything against the law (other than trespassing in the phone company parking lot). Bice dep. pp 23-24, 30-31, 58. Mr. Reece left the parking lot after speaking with Officer Bice. *Id.* p. 31-32. Mr. Reece was not charged with any crime at the time.

Officer Bice then took Mariann to the police station. In transit, and again at the police station, Officer Bice questioned Mariann without her parents present and without their permission. Bice dep. p. 39. When Mrs. Fetter arrived at the police station, she wanted to see Mariann before she was interrogated, but "didn't get that opportunity," and she does not remember giving Officer Bice permission to talk to Mariann alone. Fetter Dep.,  p. 45. Mariann later told her mother that, while Officer Bice was interviewing her, "he was very rude and arrogant," he yelled at her "to stop crying and quit being a bawl baby," and that a pen he had thrown struck her. *Id.*, p. 44. Officer Bice also told Mrs. Fetter that her daughter was a "spoiled brat." *Id.* Mrs. Fetter did not tell Officer Bice or any of the other police officers that, before February 4, 2007, she had told Mariann  not to be around Mariann (Fetter dep. 29); however, as a result of the incident, Mrs. Fetter prohibited her daughter from being around Mr. Reece. Christine Fetter Deposition p. 47-48.

Around 12:45 to 1:00 a.m. on February 5, 2007, Officer Bice called Mr. Reece and asked him to come to the police station and write a statement, which Mr. Reece agreed to do. Reece Dep. p. 77-80. At the time Officer Bice called Mr. Reece, he already intended to charge him with contributing to the delinquency or unruliness of a child. Bice Dep. pp 51-52. It is clear from Officer Bice's testimony that Mr. Reece was not charged based on anything he wrote in his statement.

However, defendant points out that in his statement  Mr. Reece wrote that he knew that Mariann's parents would not want him around her. Mr. Reece simply assumed that her parents would not want him to be with her due to their age difference.  However, Mariann's parents had never told Mr. Reece (or Mariann) that they did not want him to

be around Mariann. Reece dep. p. 87-88; Fetter Dep., pp12, 27.   In fact, Mrs. Fetters testified that she did not remember having seen Mr. Reece before the day of the deposition.  Fetter dep. 9.   Mrs. Fetters testified that she did not tell the police officers that she had instructed Mariann before that night to stay away from Mr. Reece.  Fetter dep. 29.  She did tell the two of them not to be around each other after the criminal charges were filed "(g)iven the incident and finding out his age."  Fetter dep. 46.  In his deposition, Office Bice conceded that, if Mr. Reece had not been told by Mariann's parents not to be around her, his actions would not have constituted contributing to the unruliness or delinquency of a minor. Bice Dep.  p. 72.

Officer Bice, apparently attempting to justify charging Mr. Reece, falsely testified that Mrs. Fetter told him that she had seen Mr. Reece leaving her house  and had told him not to be around Mariann.  Bice dep. 41.  But in deciding the motion for summary judgment, Officer Bice's testimony must not be considered, as it is contradicted by the testimony of Mrs. Fetter.

Officer Bice was questioned in his deposition about whether Mariann was "habitually disobedient," as required by part of the statutory definition of "unruly child." Officer Bice responded that , based on what he was told by Mrs. Fetter that Mariann was told not to be around Mr. Reece, he had reason to believe that Mariann Fetter was "constantly being disobedient to her parents." Bice Dep. pp 90-91.  Mariann's parents, however, would disagree. In her deposition, Christine Fetter stated that:

> Our kids aren't bad kids. We don't let them break the law. They are taught to respect the law… [Mariann is] in marching band, she's in choir, she's in Harding Singers, she sings a lot of times the national anthem, she sings for the basketball games, the national anthem. She's quite good in music. She's an A/B student.

5

Fetter dep. 51.  It is clear from Christine Fetter's testimony that Mariann was not a problem child, but an upstanding young woman who made a bad decision (lying to a police officer) because she was scared.

At the end of the night, Mr. Reece was charged with contributing to the unruliness of a child. Reece Dep., p. 90; Bice dep. 61 and Exhibit 2 to Bice deposition.  Mrs. Fetter did not push for charges against Mr. Reece, because she thought "Jeff didn't do anything improper with Mariann." Fetter Dep.*,* p. 49. In fact, she told the police officers that she "didn't think [Mr. Reece] was a bad kid." *Id*. Mrs. Fetter did not learn about the charge that Officer Bice was pressing against Mr. Reece until the prosecutor called her. Fetter Dep. pp 41-42, 54. Mrs. Fetter told the prosecutor that the charge against Mr. Reece "was an unnecessary charge." *Id,* p. 42. Based on Mrs. Fetter's statements, the charge against Mr. Reece was dropped. Exhibit 3 to Bice deposition.  Mrs. Fetter was happy that the charge against Mr. Reece was dropped because she "thought the charges were ridiculous." *Id*. p. 43. In her deposition, Mrs. Fetter nicely summed up why the charges against Mr. Reece were ridiculous:

> Because he had just picked her up to go to a restaurant. That's all there was to it. Other than if he was breaking the law by being in a parking lot he shouldn't have been in, he wasn't breaking any laws. I mean, he didn't do anything wrong… He didn't touch her in any way inappropriately. There was no contact between them, any physical contact, in any way. There was no romantic contact in any way. She was sitting there eating, and that was it.

Fetter Dep.pp 53-54.

The charge of contributing to the unruliness of a child was amended to contributing to the delinquency of a child on June  4, 2007.  Second page of Exhibit 2 to Bice deposition and Bice Dep. pp 78-79.   The charge was dismissed on June 22, 2007. Exhibit 2 to Bice dep. and Bice dep. 78.

## III.  LAW AND ARGUMENT

### A.  Complaint

Plaintiff has claimed in his Amended Complaint that Marion Police Officer Jeremy Bice "acted maliciously in initiating and continuing charges against plaintiff for which there was no probable cause."  Amended Complaint, ¶11.  Plaintiff also claimed that "Defendant Bice, by committing the acts alleged in this Complaint did not have probable cause to initiate and continue the prosecution of plaintiff and therefore maliciously prosecuted plaintiff, in violation of the Fourth and Fourteenth Amendments to the Constitution and 42 U.S.C. §1983."  Amended Complaint, ¶15.  Plaintiff further claimed that "Defendant Bice's actions constitute malicious prosecution under state law."  Amended Complaint, ¶17.  Finally, plaintiff claimed that the City of Marion is liable because it acted with deliberate indifference in failing to properly train, supervise, instruct, and discipline him."  Amended Complaint, ¶19.

### B.  Plaintiff Has Proved that Defendant Bice Violated His Fourth Amendment Right to be Free From Malicious Prosecution

The Sixth Circuit Court of Appeals has held that courts must engage in a two part inquiry in order to determine whether to grant summary judgment in a case in which the plaintiff claims that law enforcement personnel violated his/her constitutional rights under 42 U.S.C.§1983 and the Fourth Amendment.  First, the court must determine whether " 'in the light most favorable to the party asserting the injury,…the facts alleged show the officer's conduct violated a constitutional right….'"  It is necessary to adopt[]the plaintiff's version of the facts.'"  *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008).  The second step is to determine "whether the right was clearly established."  *Id.*

1.  **Plaintiff has proved that Officer Bice deprived him of his constitutional rights-that he charged and continued the prosecution of the plaintiff without probable cause to believe that he committed a crime**

Plaintiff has presented sufficient evidence that Officer Bice deprived him of his constitutional rights.

The Sixth Circuit Court of Appeals has held that "(m)alicious prosecution claims can be brought under either federal or state law." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005), citing *Thacker v. City of Columbus*, 328 F.3d 244, 258-59 (6th Cir. 2003). Law enforcement personnel violate the Fourth Amendment if they maliciously prosecute the plaintiff. *Thacker, supra.*

The Sixth Circuit Court of Appeals has held that "(i)n order to prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution." *Voyticky, supra*, citing *Thacker*. See, *Beckett v. Ford*, 613 F.Supp.2d 970, 980 (N.D. Ohio 2009). "Under Ohio law, the elements of malicious prosecution are: "'(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.'" *Voyticky, supra,* at 675-76, quoting *Trussell v. General Motors Corp.,* 53 Ohio St.3d 142, 559 N.E.2d 732, 736 (1990). Under both Ohio and federal law, " 'if the lack of probable cause is demonstrated, 'the legal inference may be drawn that the proceedings were actuated by malice.'" *Beckett v. Ford, supra*, quoting *Thacker v. City of Columbus, supra*. See also, *Harris v. Bornhorst*, 513 F.3d 503, 521 (6th Cir. 2008) and *Flynn v. Okafor*, 2004-Ohio-3829, 2004 WL 1607024, ¶22-"'[i]n an action for malicious prosecution, the want of probable cause is the gist of the action. If such be proven the legal inference may be drawn that the proceedings were actuated by malice.'"

The Sixth Circuit Court of Appeals has held that probable cause exists if "the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense (citation omitted).  Moreover, the existence of probable cause in a section 1983 action presents a jury question, unless there is only one reasonable determination of probable cause possible (citation omitted)." *Diamond v. Howd*, 288 F.3d 932, 936-37 (6th Cir. 2002).  See *Parsons v. City of Pontiac, supra,* 533 F.3d at 501.

The Court has further held that "to have probable cause to arrest, a police officer must take into account all the evidence-both inculpatory and exculpatory-that he has at the time of arrest.  The 'totality of circumstances' may change between the initial contact with the suspect and the time of the arrest."  *Klein v. Long*, 275 F.3d 544, 551-52 (6th Cir. 2001).  In addition, the Court of Appeals has stated "Indeed, if anything is clear about the Fourth Amendment, it is this: government may deprive its citizens of liberty when, and only when, it has a viable claim that an individual has committed a crime, and that claim is supported empirically by concrete and identifiable facts."  *McCurdy v. Montgomery County*, 240 F.3d 512, 519 (6th Cir. 2001). The "bare allegation of criminal wrongdoing, although possibly justifying a brief investigatory detention, was insufficient by itself to establish probable caue that the suspect had committed a crime….Police officers may not 'make hasty, unsubstantiated arrests with impunity, 'nor 'simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone.'" *Parsons v. City of Pontiac*, *supra,* 533 F.3d at 500-501.

Plaintiff has proved all three elements for malicious prosecution.  1) There was a lack of probable cause to charge and to continue to prosecute Mr. Reece with contributing to the unruliness of a minor or the  amended charge of contributing to the delinquency of a minor.  2) The charge was dismissed by Marion Municipal Court Judge Teresa Ballinger.  Judge Ballinger stated in her dismissal entry that "the child's mother now states that she had never specifically forbidden her daughter from seeing Defendant, that Defendant had never been told directly that he was not to be around the girl, and that she had merely 'suggested' to her daughter that she should be hanging out with people who were closer to her own age.  The child's mother, who would be a critical witness in the State's case, is now adamant that Defendant 'did nothing wrong.'"  Exhibit 3 to Bice deposition.  3) The inference of malice may be inferred from the fact that there was no probable cause to institute and to continue to prosecute Mr. Reece.

Mr. Reece was charged and prosecuted under O.R.C. §2919.24, a first degree misdemeanor, which makes it unlawful to contribute to the unruliness or delinquency of a child.  Officer Bice stated in his charge that Mr. Reece contributed "to a child becoming an unruly child, as defined in R.C. 2151.022."  Bice dep. exhibit2.  As Officer Bice testified in his deposition, the child must be "unruly" in order for someone to be charged with contributing to the  unruliness of a child.

O.R.C. 2151.022 defines "unruly child" as

(A) Any child who does not submit to the reasonable control of the child's parents, teachers, guardian, or custodian, by reason of being wayward or habitually disobedient;

(B) Any child who is an habitual truant from school and who previously has not been adjudicated an unruly child for being an habitual truant;

(C) Any child who behaves in a manner as to injure or endanger the child's own health or morals or the health or morals of others;

(D) Any child who violates a law, other than division (C) of section 2907.39, division (A) of section 2923.211, division (C)(1) or (D) of section 2925.55, or section 2151.87 of the Revised Code, that is applicable to a child.

Officer Bice testified that paragraph A is the only part of O.R.C. 2151.022 that applies to Mr. Reece.  Bice dep. pp 89-92.  As Officer Bice testified, Mariann Fetter was not a truant and did not behave "in a manner as to injure or endanger" her "own health or morals or the health or morals of others" and did not violate a law "that is applicable to a child."  Therefore, in order for Mr. Reece to contribute to the unruliness of a child under O.R.C. 2919.24 and 2151.022 he had to "aid, induce, cause , or contribute" to Ms. Fetter not submitting "to the reasonable control" of her parents "by reason of being wayward or habitually disobedient."

The law in Ohio is that the "phrase  [in O.R.C. 2151.022(A)] '…by reason of being wayward or habitually disobedient,' requires a showing of a **pattern of conduct**." *Matter of Cooper*,  1989 W.L. 108730 (Ohio App. 1989), quoting *in re Qullen*, 1981 W.L. 5841 (Ohio App. 1981) (emphasis added).

There was no reason for Officer Bice to believe that Mariann was an unruly child.

First, there is absolutely no evidence of a "pattern of conduct."  Officer Bice testified that there was reason to believe that Mariann was being constantly disobedient to her parents because she was with Mr. Reece and she was told not to be around him. However, Officer Bice did not have any reason to believe, based on the information that he had, that there was a pattern of Mariann disobeying her parents.  The only information that Officer Bice had, based on his own testimony, was that on one occasion Mariann had disobeyed her parents.  Furthermore, Officer Bice's testimony was contradicted by Mrs. Fetters.  Mrs. Fetters' testified that  she did not tell Mariann not to be with Mr. Reece and

did not tell police officers that she had given Mariann such an instruction.  Fetter dep. pp 12, 27, 29.  If it would be criminal for a teenager to be resistant or disobedient to his/her parents on one occasion, all teenagers would be criminals.

Second, there is an issue of fact about whether Ms. Fetter was wayward or disobedient to her parents on even one occasion.  Officer Bice testified that Mrs. Christine Fetter, Mariann's mother, told him at the police station that she saw her daughter and Mr. Reece together and told Mr. Reece that he was "not to come back or be around Mariann at that point."  Bice dep. p. 41.  Officer Bice testified that he intended to charge Mr. Reece with contributing to the unruliness of a child based on Mrs. Fetters' statement that she told Mr. Reece not to be around her daughter.

Mrs. Fetter's testimony is contrary to that of Officer Bice.  She testified that she did not remember seeing  Mr. Reece prior to the date of her deposition;  that she had never told her daughter not to be with Mr. Reece; and she did not tell the police officers that she had given such an instruction to her daughter.  Fetter dep. 12, 27. Also, Mr. Reece testified that he was never told by Mr. or Mrs. Fetters that he should not be around Mariann.  Defendants rely on Mr. Reece's written statement to the police officers that he was reluctant to pick up Mariann because he "knew her parents didn't want me around her" and only agreed to do so if her friends or mother could not take her.  Mr. Reece testified that he assumed that Mariann's parents did not want him to be around him because of the difference in ages (she was 15 and he was 22), but that her parents had never told him not to be around her.  The law requires at the very least in order for a child to be unruly, **the child** must be "wayward" or "habitually disobedient."  The child must be resistant or disobedient to her parents' instructions.  That another person, such as Mr.

Reece, assumed that that a child would be violating a parent's desires does not make the **child** "unruly." In order for there to be probable cause to charge and/or prosecute Mr. Reece for contributing to the unruliness of a child, there would have to be a statement from a parent (or a child) that the child was being disobedient to the parent. Based on the testimony of Mrs. Fetter, Officer Bice did not have such a statement.

There was also no probable cause to believe that Mr. Reece had contributed to the delinquency of a child, as he was charged in "the amended charge." Second page of Bice dep. 3. Defendants admit that there was no basis to charge Mr. Reece with contributing to the delinquency of a minor, as they stated in their memorandum that "(n)one of the definitions of a 'delinquent child' found in R.C. 2152.02(F) appear to be applicable in this case." Defendant Bice's Motion for Summary Judgment, p. 6. See, *Woods v. City of Chicago*, 234 F.3d 979, 989 (7th Cir. 2000). Therefore, even defendants would have to concede that there was no basis to continue to prosecute Mr. Reece after the charge was amended.

### 2. Officer Bice does not have qualified immunity, as it was clearly established that charging and prosecuting plaintiff without probable cause violated the Constitution

The law is well established that in order to hold public officials liable for violating a person's constitutional rights, it is necessary to present evidence that the right was clearly established at the time of the defendant's acts, and that a reasonable person acting in an official's position would have known that the acts were unconstitutional. See, *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) and *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008). As the Sixth Circuit Court of Appeals has held, it was clearly established long before 2007 that "the right to be free from malicious prosecution

was a right clearly established under the Fourth Amendment." *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999). It was also clearly established that if charges and prosecutions are not supported by probable cause, they would constitute malicious prosecution. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669 at 675. See also, *Parsons v. City of Pontiac,* 533 F.3d at 504-" '(i)t is beyond doubt that in 2001 the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual.'" In *Parsons*, the Court of Appeals rejected the argument that that the detectives were immune from the suit because they were "reasonably mistaken in their understanding of the relevant facts." *Id.*, at 503-504.

The question in this case is whether a reasonable jury, in considering the facts most favorable towards the plaintiff, could conclude that there was not probable cause to charge plaintiff, and whether it was clearly established at the time that charging and prosecuting the plaintiff without probable cause constituted a violation of a constitutional right. The conduct of Officer Bice is not objectively reasonable, in light of Ohio law interpretation of what constitutes an "unruly child" (a "pattern of conduct") and in light of Christine Fetters' testimony that contradicted the police officers, that she did not tell her daughter they should not be with Mr. Reece.

That Officer Bice may have "relied on Lt. Clewell's advice in filing" the contributing to the unruliness of a child charge does not immunize Officer Bice's conduct. See, Defendant Bice' Motion for Summary Judgment, pp 9-10. If Officer Bice were exempted from liability by seeking the advice of a supervisor, all government actors would be relieved of responsibility by merely getting the support of their supervisors for

their unconstitutional acts.  The Sixth Circuit Court of Appeals has "determined that reliance on counsel's legal advice constitutes a qualified immunity defense only under 'extraordinary circumstances,' and has never found that those circumstances were met." *Silberstein v. City of Dayton*, 440 F.3d 306, 318 (6th Cir. 2006).  There is even less reason to immunize a police officer who has obtained the advice of a supervisor who may assist the officer in violating a citizen's civil rights or who has every reason to try to protect the municipality.

### C.  PLAINTIFF HAS PROVED MALICIOUS PROSECUTION UNDER STATE LAW

As the requirements of malicious prosecution under state law are similar to the federal constitutional claim, plaintiff has proved, considering the evidence in the light most favorable to the plaintiff, that Officer Bice violated his right under state law to be free from malicious prosecution.

### D.  PLAINTIFF HAS PROVED THAT HE MAY BE ENTITLED TO PUNITIVE DAMAGES

Contrary to defendant Bice's argument(Defendant Bice's Motion for Summary Judgment, p. 12), this Court must not grant summary judgment on plaintiff's claim for punitive damages.  The law is that "(p)unitive damages for deprivation of civil rights may be awarded when the defendant willfully and intentionally violates another's civil rights or when the defendant acts with reckless or callous indifference to the federally protected rights of others."  *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986), citing *Smith v. Wade*, 461 U.S. 30 (1983).  The Court in *Gordon v. Norman* stated that:

 "(t)he allowance of such damages involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a

deterrent.  Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact (citation omitted). Federal standards govern the determination of damages under the civil rights statutes (citation omitted).  Thus, punitive damages may be awarded under §1983 even where they would not normally be recoverable under the local law in the state where the violation occurred." *Id.*  See, *Brantley v. Simmons*, 1994 WL 524988, ¶12 (N.D. Ohio 1994).

Under Ohio law, punitive damages may be granted if there is a conscious disregard for the rights and safety of others.  See, *Preston v. Murty*, 32 Ohio St.3d 334 (1987).

The question of whether Office Bice intentionally and willfully interfered with Mr. Reece's civil rights and/or showed a conscious disregard for his rights when he charged Mr. Reece with a crime without probable cause is quintessentially a jury issue. A jury may infer, just as courts have done, that there is malice if a police officer charges and prosecutes someone without probable cause.  See, *supra*, at 8.

## IV.  CONCLUSION

For the foregoing reasons, defendant Bice's Motion for Summary Judgment must be denied.  The City of Marion also filed a Motion for Summary Judgment.  Plaintiff's counsel took the depositions of the Marion Chief of Police and two of its lieutenants. Based on the depositions, plaintiff will not oppose the motion of the City of Marion.

Respectfully submitted,


/s/ Alexander M. Spater
Alexander M. Spater (0031417)

360 South Grant Avenue
Columbus, Ohio 43215
(614) 222-4737 (phone)
(614) 222-4734 (fax)
Trial attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that this case is on the standard track and that this Memorandum complies with page limitations of Local Rule 7.1(f).  I also certify that on September 25, 2009, the foregoing Plaintiff's Memorandum Contra the Motion for Summary Judgment was filed electronically through the Court's ECF system.  Notice of this filing will be sent to all parties by operation of the Court's ECF system.  Parties may access this filing through the ECF system

/s/ Alexander M. Spater_____
Alexander M. Spater